UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROGER DEAN D'AUGUSTINO,

               Plaintiff,

    v.                                  **DECISION & ORDER**
                                            15-CV-6083

CAROLYN W. COLVIN,

               Defendant.

## Preliminary Statement

Plaintiff Roger D'Augustino (hereinafter "plaintiff") brings the instant action pursuant to 42 U.S.C. § 405(g) to review a decision of the Commissioner of Social Security denying his application for Social Security Disability benefits. See Complaint (Docket # 1). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. See Dockets ## 12, 14.

On August 26, 2016, a hearing was held and arguments were heard from counsel on the motions. At the conclusion of the hearing, the Court made a brief ruling on the record, finding that the ALJ's decision was not supported by substantial evidence. For the reasons stated on the record and confirmed below, it is hereby **ORDERED** that the Commissioner's motion for judgment on the pleadings (Docket # 14) is **denied** and

plaintiff's motion for judgment on the pleadings (Docket # 12) is **granted**.

## Discussion

Plaintiff sets forth two main arguments for remand: (1) the ALJ improperly reviewed and weighed the medical opinions on the record; and (2) the ALJ erred by failing to include any limitation regarding plaintiff's ability to read. See Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (Docket # 12-1); see also Plaintiff's Reply (Docket # 15). Because I agree with plaintiff that the ALJ's opinion is not supported by substantial evidence on the record, remand for further proceedings consistent with this Decision and Order is necessary.

1. The ALJ's Assessments of Medical Opinions: There were two medical opinions regarding plaintiff's intellectual limitations that were discussed in some detail by the ALJ. The first was the opinion of Dr. T. Harding, a non-examining medical consultant who completed a Functional Capacity Assessment form for the Social Security Administration. Dr. Harding never met with, spoke to or examined plaintiff. Based only on a record review, Dr. Harding found plaintiff's allegations "credible" but "not to the degree alleged." According to Dr. Harding, plaintiff was capable of performing "simple work" with "little

contact with other." AR. at 75. The ALJ gave "significant weight" to Dr. Harding's opinion, specifically finding that Harding's "opinion warrants substantial merit in making the determination that claimant is not disabled." AR. at 23.

The second medical opinion discussed by the ALJ was that of Dr. Lin. Unlike Harding, Dr. Lin personally met with and conducted a mental health evaluation of plaintiff. During the evaluation, Lin obtained plaintiff's medical history and conducted a mental status examination which assessed, among other things, plaintiff's appearance, speech, thought process, memory skills, attention and concentration, and his overall cognitive functioning. Based on her evaluation of plaintiff, Dr. Lin found that while plaintiff can "understand simple instructions," he "cannot maintain attention and concentration," is "not able to maintain a regular schedule," "cannot make appropriate decisions," "cannot relate adequately with others," and "cannot deal appropriately with stress." AR. at 271-72. Dr. Lin opined that plaintiff's prognosis was "guarded" and she recommended "vocational training." The ALJ acknowledged that, in Dr. Lin's opinion, the results of plaintiff's examination were "consistent with cognitive and psychiatric problems, which may significantly interfere with the claimant's ability to

on a daily basis." AR. at 22. However, the ALJ gave Dr. Lin's opinion "little weight." AR. at 24.

I find that the ALJ's decision to give significant weight to Dr. Harding's opinion and little weight to Dr. Lin's was arbitrary and unsupported by the record. As a general rule, "more weight must be given to an examining source than to a non-examining source." Rodriguez v. Colvin, No. 12-cv-3931 (RJS)(RLE), 2014 WL 5038410, at *17 (S.D.N.Y. Sept. 29, 2014) (citing 20 C.F.R. § 416.927(c)-(e)). An ALJ is permitted to consider the opinion of non-examining sources, but the regulations caution that "because nonexamining sources have no examining or treating relationship with [claimant], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3). It is incorrect for an ALJ to place significant weight on the findings of a non-examining source that differ from other medical evidence of record and is not adequately explained. See Frederick v. Barnhart, 317 F. Supp. 2d 286, 298-99 (W.D.N.Y. 2004)(finding error where the ALJ relied primarily on the opinion of the non-examining, non-treating review physicians). Importantly, even where a non-examining opinion is afforded weight, it alone cannot be considered substantial evidence. See Velazquez v. Astrue, No.

06-CV-0343 (MAT), 2008 WL 4911765 (W.D.N.Y. Nov. 13, 2008)(finding the ALJ's reliance on a non-consultative, non-examining opinion particularly egregious where the plaintiff alleged disability based on mental conditions); see also Ellet v. Commissioner of Social Sec., No. 1:06-CV-1079 (FJS), 2011 WL 1204921, at *9 (N.D.N.Y. Mar. 29, 2011)("Although the Social Security Regulations do not contemplate that the opinions of a non-examining physician be treated as substantial evidence, these opinions may constitute substantial evidence where they are in turn supported by substantial evidence in the record." (internal citations omitted)).

The ALJ here did not adequately explain his reasons for giving more weight to the opinion of a non-examining expert than that given to an examining expert. Moreover, the reasons that he did give do not withstand scrutiny. The ALJ stated that he gave significant weight to Dr. Harding because, as a medical consultant, Dr. Harding was "independently looking at the medical evidence." AR. at 23. While Dr. Harding presumably looked over the record that was available to him, he failed to explain how or why the records supported his opinion of non-disability. Indeed, Dr. Harding's record review seems to have relied predominantly, if not exclusively, on Dr. Lin's examination of plaintiff. Dr. Harding's report repeated and

5

adopted Dr. Lin's report, parroting Lin's findings that plaintiff is (1) "not able to maintain a regular schedule"; (2) "cannot make appropriate decisions;" (3) "cannot relate adequately with others"; and (4) "cannot appropriately deal with stress". Harding went so far as to conclude, just as Dr. Lin concluded, that "[t]hese difficulties may significantly interfere with the claimant's ability to function on a daily basis." AR. at 75, 271-72 (emphasis added). Despite adopting virtually all of Dr. Lin's assessment of plaintiff's cognitive capabilities, Harding inexplicably decided that plaintiff was capable of full-time competitive employment so long as he had "little contact with others."

Given that Harding adopted Lin's findings, it was incumbent on the ALJ to adequately discuss his reasoning for adopting one opinion over the other, particularly the non-examining opinion over the examining one. To the extent the ALJ here did give an explanation, that explanation makes little sense. The ALJ stated that he found "Dr. Lin's opinion to be unconvincing and of little value" because "Dr. Lin made a one-time examination of the claimant which cannot fully and accurately assess the full effect that his psychiatric symptoms ha[ve] on his functional capacity to perform work activities." AR. at 24. While it is true that Dr. Lin only met with plaintiff once, that is still

<u>one more time than Dr. Harding met with plaintiff</u>. Assigning more weight to a non-examining expert than to an examining expert because the examining expert only met with the plaintiff once defies logic and is error. Given no explanation of how Dr. Harding could adopt Dr. Lin's findings but reach an opposite conclusion, the ALJ erred in relying on an opinion based on a record review conducted by a non-examining expert.

Another reason given by the ALJ for relying on Dr. Harding's opinion was that Dr. Harding had the ability to "take[] into consideration the entirety of the medical record." However, it is far from clear that Dr. Harding did review the entire record. Dr. Harding began his narrative of plaintiff's functional capacity by describing plaintiff as a 26 year old male with a "12th grade <u>regular education</u>." (emphasis added). This statement suggests that Harding did not review the entire record, or if he did, that his review was careless. The record repeatedly documents that plaintiff did not receive a regular mainstreamed education but was, in fact, a special education student with special needs and learning disabilities, who graduated with an IEP diploma.

In sum, the ALJ's granting of "significant weight" to the assessment by Dr. Harding was erroneous, and remand is warranted. <u>See Pratts v. Chater</u>, 94 F.3d 34, 38 (2d Cir.

1996)(finding that a non-examining expert medical opinion based on an incomplete record cannot constitute substantial evidence on which to find plaintiff's not disabled).

2. <u>Plaintiff's Inability to Read:</u> The record is filled with references to plaintiff's inability to read:

- A psychological report from 1999, while plaintiff was thirteen years old and in sixth grade, states "Roger continues to show low achievement scoring in the area of Reading. He obtained scores below the 1st percentile in reading recognition and reading comprehension." AR. at 210. He was assessed to have reading comprehension at a third grade level. AR. at 208.

- School records from 2002 quote plaintiff saying "I cannot read or write and that is my problem." AR. at 316. The record shows testing scores placing plaintiff's cognitive functioning in the deficient range and at the first percentile compared to peers nationwide. AR. at 317.

- 2005 school records while plaintiff was in his final year in an IEP program show that plaintiff received testing accommodations including extended time; testing over several sessions; minimal distractions; having the directions read to him; use of a scribe; use of a calculator; having the test read to him; and receiving no penalty for punctuation, paragraphing and spelling. AR. at 200. He was excused from the requirement of having to learn a second language. <u>Id.</u> The report states that he had "significant delays in reading comprehension, written expression, social skills, and attentional skills." AR. at 201. Plaintiff needed to expand his "expressive vocabulary." <u>Id.</u>

- Plaintiff described stress in his work place, that people made fun of him for his learning disabilities, and that he felt ashamed at his inability to read and write while receiving

mental health treatment in 2008 and early 2009. AR. at 252, 357. He said that he felt that his inability to find vocational success in his life was due to his reading level. AR. at 252.

- Plaintiff testified before the ALJ that he has struggled to read and write his entire life, that he has his driver's license but had to have the test read to him, and that he does not drive and gets lost when he does. AR. at 38-40. He stated that his girlfriend helps him fill out forms, and that he cannot write a check. AR. at 66-67. He was unable to sign up for public assistance because the person at intake would not read the form to him. AR. at 42-45.

Indeed, the record here pays tribute to the fact that plaintiff has significant learning disabilities and has struggled to read and write his entire life. At the hearing, counsel for the Commissioner asserted that since plaintiff had tested at a third grade reading comprehension level, the ALJ adequately considered plaintiff's reading limitations by fashioning an RFC of "simple, but not complex instructions and tasks." See Memorandum in Support of the Commissioner's Motion for Judgment on the Pleadings (Docket # 14) at 20.

There are several problems with the Commissioner's arguments. First, counsel for the Commissioner overestimates the abilities of someone who is only capable of reading at a third grade level.[1] In Gross v. McMahon, 473 F. Supp. 2d 384,

---

[1] Counsel for the Commissioner argued that an average third grader can independently read and comprehend the first Harry

9

389 (W.D.N.Y. 2007), Judge Larimer found that "a third-grade reading level is so low that it calls into question whether plaintiff is functionally illiterate, particularly in light of plaintiff's other testimony that he had been placed in special education classes." See also Skinner v. Sec'y of Health & Human Servs., 902 F.2d 447, 450 (6th Cir. 1990)(concluding that a claimant who reads below the third grade level was illiterate). Second, despite ample evidence in the record documenting plaintiff's learning disabilities, special education classes and reading comprehension test scores in the first percentile, the ALJ never mentioned any limitations to reading at the hearing or in his decision. And, as plaintiff points out, the jobs of cafeteria attendant and collator operator, two of the jobs that the VE testified plaintiff could perform, require that plaintiff read at a rate of 95-120 words per minute and print simple

---

Potter book (see J.K. Rowling, Harry Potter and the Sorcerer's Stone (1997)) and thus is undoubtedly capable of any reading required to perform a job as a cafeteria worker. This argument, while interesting, has no support in the record. And, in any event, I believe counsel for the Commissioner has grossly overestimated the reading abilities of a third grader. The first Harry Potter book has a Lexile® Framework for Reading Score closer to a sixth grade reading level than a third grade reading level. See https://lexile.com/fab/results/?keyword=harry+potter+; see also Washington State Secretary of State, Reading Level Correlation Chart, https://www.sos.wa.gov/_assets/library/libraries/firsttuesdays/ReadingChart.pdf.

sentences containing subject, verb, and object, and series of numbers, names and address.[2]

An ALJ has an affirmative duty to develop the record "in light of the essentially non-adversarial nature of a benefits proceeding." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)(internal quotations and citations omitted). Here, there is a serious question as to whether the plaintiff is functionally illiterate. "The possibility that Plaintiff is functionally illiterate is further exacerbated in this case by a failure to adequately develop the record." Campbell v. Astrue, 713 F. Supp. 2d 129, 136 (N.D.N.Y. 2010)(remanding "for development of the record with respect to Plaintiff's abilities to read and write"); see also Gross v. McMahon, 473 F. Supp. 2d at 390 (ordering remand for failure to develop the record on the issue of the plaintiff's literacy); Yourek v. Barnhart, 334 F. Supp. 2d 1090, 1093 (N.D. Ill. 2004)("The ALJ had an obligation to develop a complete record once Mr. Yourek had raised the issue of his potential illiteracy."); Carbaugh v. Colvin, No. 14 C 7431, 2016 WL 792299, at *4 (N.D. Ill. Mar. 1, 2016)(Given evidence in the record, ALJ "was obligated to develop the record to determine Plaintiff's literacy level."). Remand is necessary

---

[2] See Appendix C: Components of the Definition Trailer, Dictionary of Occupational Titles, http://www.occupationalinfo.org/appendxc_1.html.

here for the ALJ to develop the record and make a clear finding regarding plaintiff's ability to read.

## Conclusion

For the reasons stated above and on the record at the hearing, the Commissioner's motion for judgment on the pleadings (Docket # 14) is **DENIED**, and plaintiff's motion for judgment on the pleadings (Docket # 12) is **GRANTED** to the extent that the Commissioner's decision is reversed and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:   September 16, 2016
         Rochester, New York